111 U.S. 373
 4 S.Ct. 519
 28 L.Ed. 461
 STEWART and another
v.
HOYT and others, Ex'rs, etc.
 April 21, 1884.
 
 Edwin H. Abbott and J. Hubley Ashton, for appellants.
 E. Mariner, for appellees.
 GRAY, J.
 
 
 1
 This is an appeal from a decree dismissing a prtition of the trustees of the Wisconsin Central Railroad Company, to be allowed, out of the proceeds of a sale of the railroad property and franchises of the Milwaukee & Northern Railway Company, under the foreclosure of a mortgage thereof to trustees, (of the survivor of whom the appellees are executors,) the sum of $5,961.75 paid by the petitioners to take up coupons criginally attached to the bonds secured by that mortgage.
 
 
 2
 The facts material to the understanding of the question of law decided by this court are as follows:
 
 
 3
 By indenture of November 8, 1873, the Milwaukee & Northern Railway Company leased its railroad and all its property and franchises to the Wisconsin Central Railroad Company for 999 years: 'Yielding and paying rent therefor as follows, to wit: In and for each year of said term wherein the gross earnings, received from the demised premises as hereinafter set forth, shall exceed the sum of one million dollars, thirty per cent. of said gross earnings; and in and for each year of said term wherein said gross earnings shall exceed eight hundred thousand dollars, but not exceed one million dollars, thirty-three per cent. of said gross earnings; and in and for each year of said term wherein said gross earnings shall be less than eight hundred thousand dollars, thirty-five per cent. of said gross earnings.' The rent was payable in monthly installments, upon accounts as nearly exact as practicable, stated monthly, of the gross earnings for the month mext but one preceding, to a trustee selected by the parties jointly, upon trust to keep the sum paid until the next installment of interest was due upon the mortgage bonds, and then to apply it, or so much of it as necessary, to the payment of that interest; and if any surplus remained, to pay it to the lessor, unless due to the lessee 'for advances, as is hereinafter provided, made to or for the benefit of the lessor to pay such interest;' and if such surplus, or any part thereof, was so due, then to pay to the lessee, as afterwards provided, so much as was due for advances and interest. The lessee was also to state semi-annual accounts of the gross earnings, upon which all accounts between the parties were to be balanced. The lease contained, among other covenants, the following:
 
 
 4
 'Eighth. The second party also covenants to pay the rent hereinbefore reserved, when and as payable; and also covenants if the rent paid to the trustee, aforesaid, in any six months previous to the payment of interest on the said first-mortgage bonds, is not enough to pay the whole interest then maturing, to advance so much money as may be necessary to take up the balance of the coupons for interest as they become due and payable, and to take them up; and it is expressly agreed between the parties to these presents that for all sums so advanced the second party shall hold said coupons as a lien, and the same is hereby made and constituted a lien, on the rent hereby reserved on all the property hereby demised and leased, prior to and superior to all other liens except said mortgage, until the same be fully reimbursed, with interest at eight per centum per annum, out of the said re t, or otherwise, by the first party. It is also agreed that any surplus of rent, which appears upon the semi-annual adjustments of accounts, shall be paid to the second party, so far as may be needed to cover any advances and interest thereon made to protect the coupons aforesaid, and that only the residue of said surplus, if any, shall be paid to the first party.'
 
 
 5
 The rent which accrued in the six months next before June 1, 1874, falling short of paying the interest payable on that day on the coupons, the lessee paid and took up coupons to the amount of the deficiency, and the lessor received some of these coupons in payment of the rent. The lessor afterwards refused to receive coupons in payment of rent; and on December 1, 1874, the lessee, which had not mean while paid any rent, refused to advance money to take up the coupons. The two corporations, after other disputes had arisen between them, executed, on June 1, 1875, a supplemental indenture, containing the following provisions:
 
 
 6
 'First. In lieu of the rent reserved in the lease, and of all advances of money to take up the interest coupons of the Milwaukee & Northern Railway Company, as provided in said lease, the Wisconsin Central Railroad Company shall pay, and the Milwaukee & Northern Railway Company shall accept, for and during the space of three years from and after the first day of June, 1875, the amount of forty per cent. of the gross earnings received from the demised premises; and after the expiration of said three years, and during the remainder of the term, the rent shall be paid as reserved in said lease, if the rent so reserved is sufficient to pay said coupons; but if not sufficient to pay said coupons, then the Wisconsin Central Railroad Company shall pay, and the Milwaukee & Northern Railway Company shall accept, in full satisfaction of rent for the demised premises, such part of said gross earnings, not exceeding in any event forty per cent. thereof, as shall be sufficient to pay said coupons; all accounts being settled exactly, and all liabilities and obligations between the two companies being adjusted and discharged by and upon the semi-annual statements provided in said lease, and on the thirty-first day of May and the thirtieth day of November in each year, and said semi-annual statements being accepted by each company as final adjustments of all claims for rent of the demised premises to the respective date thereof.'
 
 
 7
 'Fourth. The Milwaukee & Northern Railway Company, in consideration of the increased rental and agreements aforesaid on the part of the Wisconsin Central Railroad Company, hereby releases the Wisconsin Central Railroad Company from any and all obligations to hereafter make any advances of money to take up the interest coupons of the Milwaukee & Northern Railway Company, as stipulated in said lease; and also from any and every obligation arising out of any previous neglect to make said advances hitherto due and payable under terms of said lease; and also from any and every obligation to pay any money under said lease and any provision thereof, in the nature of rent and advances, to or for the benefit of the Milwaukee & Northern Railway Company, except the proportion of gross earnings (not exceeding in any event forty per cent. thereof) which is herein agreed, when and as the same is payable under the terms of this agreement and said lease.'
 
 
 8
 'Sixth. All the provisions of said lease, except so far as are herein expressly modified or changed, are hereby by each of said companies ratified and confirmed; and all causes of action for breach of any agreement therein contained, which have arisen from its date of execution until this day, are hereby mutually waived and forever released by and between said companies.'
 
 
 9
 The lessee paid rent computed according to the supplementary agreement from its date until September, 1875. On January 2, 1879, the lessee assigned to the petitioners, in trust to pay debts to its employes, and expenses of runing it railroad, all sums of money on hand or to be received, and all accounts receivable of every nature, for or on account of earnings and income of either railroad, and delivered to the petitioners the coupons taken up as aforesaid, of which the sum claimed in their petition had not been reimbursed to them.
 
 
 10
 The petitioners contend that for the sum paid to take up coupons in accordance with the provisions of the lease of November 8, 1873, they have a claim against the lessor, and a lien upon the proceeds of the sale of the mortgaged property equal to those which the original owners of those coupons had. But this court concurs in opinion with the circuit court, that, if the lessee ever had such a claim and lien, they were released by the supplemental agreement of June 1, 1875, and the payment of rent, and the adjustment of semiannual accounts, in accordance therewith. By this agreement the provisions of the original lease were confirmed and ratified, 'except so far as are herein expressly modified or changed;' the proportion of gross earnings to be paid as rent was increased; all accounts between the parties were to be adjusted and discharged by and upon the semi-annual statements; the lessor released the lessee from all obligation to make future advances, and from all liability for past neglect to make advances, to take up coupons; and each party released the other from all causes of action which had arisen for breach of any agreement in the original lease. Any obligation of the lessor to reimburse to the lessee money paid by the latter to take up coupons arose under an agreement in the original lease, and was one of the obligations adjusted and discharged by and upon the semi-annual statements. The intention of the supplemental agreement, as appears upon its face, was to adjust all existing controversies between the parties, by agreeing to pay and receive an increased rate of rent, and by mutually releasing all existing obligations and liabilities, including, on the one side, the lessee's obligation to take up coupons in the future, and its liability for neglect to take them up in the past; and, on the other side, the lessor's obligation and liability to the lessee by reason of coupons already taken up by the latter. The parol evidence introduced by the petitioners at the hearing, if competent in law, was quite insufficient in fact to control or vary the meaning of the written instrument.
 
 
 11
 Decree affirmed.